MAPLEHURST BAKERIES MAPLEHURST BAKERIES MAPLEHURST BAKERIES MAPLEHURST BAKERIES MAPLEHURST BAKERIES MAPLEHURST BAKERIES MAPLEHURST BAKERIES MAPLEHURST BAKERIES MAPLEHURST BAKERIES MAPLEHURST BAKERIES MAPLEHURST BAKERIES MAPLEHURST BAKERIES MAPLEHURST BAKERIES MAPLEHURST BAKERIES A provider who is a preferred provider, and there's no question and it's not contested in this case that my client is a preferred provider, has two options. Notably, they do not have the option of suing on the plan. So Blue Cross is distinguishable, is it not? The problem in Blue Cross was it was a fight over the reimbursement rates. Correct. Nobody was bringing a claim on behalf of a little girl who was injured. So there was no particular health care plan that was an issue. The fight was between the providers and the payors over how much the rates would be. And we said for ERISA purposes, that's not an ERISA case. Go fight that out as a state breach of contract action. That's precisely the dispute my client has with Maplehurst Journal. You've got a hybrid here. You want pieces of the group health care plan because you want to stand in the shoes of the little girl and her family in asserting the claim. But you don't want the two-year statute of limitations. You want us to jump to the payor contracts, which have no statute of limitations, and then apply the Washington six-year general statute. And I've got the same concern Judge Kleinfeld articulated. My answer to Judge Kleinfeld's question was not very good. You're asking the same question. I'm not standing in the shoes of Michelle Nieves. Then you're denying there's any agency interrelationship between the other parties. Well, if you're not, is that right? I'm sorry, Judge Beeser, I didn't understand your question. The only relationship where there's an agreement, there's a direct contractual promise. But you're not asserting agency of one party to any other party, are you? I'm asserting that there is a contractual relationship between Maplehurst plan on the one end and the hospital on the other end. And Maplehurst cannot deny that because they assert entitlement to reduced reimbursement rates, demonstrating there has to be a contract between the two parties. There are two different things here, and I could still be confusing them because it's so complex. You stand in the mother's shoes to get paid from the mother's health plan at all. Your Honor. And you stand in your own shoes with respect to an insurance company where you're a preferred provider for what your rate of pay is, a preferred provider doesn't get nicked for as much, I can't remember what their terms are, but basically they knock more money off the bill if you're not a preferred provider. You're a preferred provider, so you get paid at the better rate instead of the worse rate. But you don't have any right to get paid at all under a preferred provider contract. All you have a right to is the better rate from the insurance company. And it looks to me as though this isn't a fight about the rate. It's about a fight about whether you get paid. Your Honor, the point I'm not making here apparently is I don't have to sue in Michelle Nieves' shoes. I don't have to sue on the plan. This court in Laborers v. Doctors Medical Center just handed down in August, where a provider has chosen to sue on its preferred provider agreement, it is not pursuing a claim for benefits under the plan. You may be a preferred provider for Blue Cross Blue Shield. If I have my insurance with a different company, say State Farm now sells medical insurance, then even though you're a preferred provider, you don't have a right to get paid at all from Blue Cross for my medical care. But the difference, Your Honor, is that there is a contractual relation. If I go to your hospital and State Farm leaves you high and dry, you can't go to Blue Cross on the ground that you're a preferred provider if I have State Farm Medical. We don't have that situation here. Well, when you say you're not standing in the mother's shoes, that's what it means to me. You must mean something else. The cases are quite clear that if there is coverage under the plan, and that's not disputed, Michelle Nieves was a dependent of an employee and trauma care was covered, never disputed. The plan is irrelevant thereafter. Yeah, and the only person that got medical care was the little girl. The only person who was liable for the money was the mother. The mother had a claim against her own insurance company. She assigned that claim to you. Incorrect. To the hospital. Maplehurst is directly liable to the hospital pursuant to the preferred provider agreement, and the plan references that. What words are you saying in the preferred provider agreement say what you need them to say? I thought all it covered was what the rate of reimbursement was. No, Your Honor. Your Honor, the Maplehurst plan in the record at page 223 distinguishes between preferred providers and non-preferred providers. Okay. Now, we've got four different contracts here. Which contract are we looking at? I'll look at all four of them, Your Honor. I tried to submit. Let's look at the one you were just looking at. I know there are four. Very simple question. Just tell me which of the four. Okay. We'll look at the Maplehurst employee plan. Okay. In the record at page 223, preferred providers agree to accept the negotiated rate as payment in full. It is that agreement, and it is the negotiated rate that my claim is based on. Michelle Nieves is an contractor. That's just what I just asked you about. I'm sorry? That's just what I just asked you about. All it's talking about is the rate, not if. And that's all that's at issue in this case. If you render medical care to somebody who is not covered by this, by a policy for the medical care rendered, then it really wouldn't matter what the deal was on the rate. Absolutely agreed, Your Honor. There has to be coverage under the plan. And the cases make clear that if there is a dispute about coverage under the plan, then you're talking about the plan. We are not talking about the plan. Are you saying that, see, if you were saying I'm standing in the mother's shoes and our dispute is about they're only reimbursing us for the non-preferred provider rate and we want to be reimbursed at the preferred provider rate, then I can understand your argument that the contract that matters is the preferred provider contract. But I understood you to say, no, we're not standing in the mother's shoes, and it's not just a dispute about whether we get the preferred provider rate. Your Honor, we are not standing in the mother's shoes. If we were standing in the mother's shoes, we would be suing essentially in her name, okay? Well, you got an assignment from her, did you not? Yes. You're just saying you're not relying on us. Exactly. And the cases hold that if we elect not to rely on the assignment, which we elected to do once this two-year suit limitation clause came up, then we are free to pursue our state law claims based on the preferred provider agreement directly between the hospital and the payor. Okay. And now that gets back, I think, to Judge Beeser's question, and that is, quo worento, who had the authority to bind Maplehurst to this contractual obligation that the contract is seeking to enforce? Benecorp, their third-party administrator. Now, can you walk me through the contract so that I can understand how we get from the hospital back down to the employer? Okay. Your Honor, the agreement between Maplehurst and its TPA states that I believe section 3.5. Well, if you don't use initials, tell us exactly what that contract says and what page in the record you're referring to so we can look at the language. I am referring to the agreement between Benecorp, which is the third-party administrator for the plan. Right. And their agreement with the preferred provider organization. Hospital, right? No. It's one step removed. Okay. Is this the Benecorp CNN agreement? Correct. Okay. And that's in the record beginning at page 115. Okay. In section 1.05, it says, preferred providers are health care facilities and professional care providers with which CCN, that's the preferred provider organization, contracts for the provision of health care services or benefits pursuant to this agreement. Okay. It is this agreement that Michelle Nieves received trauma care under. No. No. No. Yes. I'm sorry, Your Honor. That's precisely what is held in Meadows and in Cedars-Sinai, that there are two avenues. I could stand here under assignment. But if I did, I would have the two-year provision to fight with. I can throw that overboard. There is a case, I wish I had the name of it, where they sued under assignment. It was dismissed. They refiled under their preferred provider agreement. The res judicata defense was dismissed by the court and said, no, this is an independent, direct claim on the preferred provider agreement, and the plan falls out. You've referred several times to a bunch of cases that say that. That anesthesia case, I didn't think, did the trick for you. Could you give me another one? Well, the very best, there are two cases, Your Honor, I'd call your attention to. Laborers versus Doctors Medical Center, that's this Ninth Circuit you decided in August. That is the one that holds where a provider chooses to sue on its preferred provider agreement. It is not pursuing a claim for benefits under the plan. And if I'm suing on my preferred provider agreement and I am not pursuing a claim for benefits under the plan, then procedural rules applicable to a claim for benefits under the plan are inapplicable. So if I understand your theory, your theory is that the only thing that the employer plan does is to identify the class of beneficiaries who are entitled to services of the preferred provider. And to the extent that you're relying on that document at all, that's it. You're simply pointing to the fact that Michelle's mother worked for the bakery company, and under the plan she's covered. The terms of art used are coverage and eligibility. Was Michelle Nieves eligible? Yes, because she was a dependent of an employee. Was there coverage for trauma care? Yes. If she had gone in for cosmetic surgery, there probably wouldn't be. If her mother had quit their job the day before, perhaps there wouldn't be. But there is eligibility, there is coverage that has never been disputed. Okay, so to go back, I know it takes a long time to answer the question because you've got to go through all four contracts, but let's go back to my pending question and Judge Beezer's agency question. Okay, there is an agreement, you pointed to, between Benecor and CNN. I see that language. I still have the unanswered Judge Beezer question, which is how do we know that Benecor was authorized and empowered as the agent of Maplehurst to enter into this contract to bind Maplehurst? Section 3.5 of the agreement between Maplehurst and their third-party administrator, which is at page 239 of the record. Okay, that's the Maplehurst-Benecor agreement. Correct. Okay. Section 3.5. And that says that Benecor, the third-party administrator or the agent for the plan, shall process, issue, and distribute claim checks as instructed by Maplehurst. Okay? We issued a claim check in this case. Pardon? We issued a check that says that's actually a claim check. They did issue a claim check. Maplehurst wrote a check on Maplehurst's account to my client. Unfortunately, it was not at the reimbursement rate agreed to between the parties, and that's why we're here. I'm sorry, Mr. Parker. You were reading from which paragraph? I'm looking at ER 241. Okay. Your question was where does the third-party administrator get the power to act on behalf of? Section 3.5 at page 239 of the record. Now, I'll grant you that there are four contracts, and while that may be factually complex, it's completely irrelevant. The Foley case which is cited says in managed care it is frequently the situation where there are a series of contracts that contemplate delivering services from one end to the other with the parties not privy to each other. That's the reality of it. And that's what we have in this situation. This comes back to my situation. If I let's say you're a preferred provider with Blue Cross, and I have Blue Cross insurance, and you have a preferred provider agreement with Blue Cross so that you get the better rate instead of the worst rate, and my plan with Blue Cross doesn't cover some preexisting condition I have. Your preferred provider agreement does not have the exclusion for my preexisting condition. It seems to me that your argument would mean that when you treat me for my preexisting condition, you can recover from Blue Cross your expenses for the preexisting condition, even though my plan doesn't cover my preexisting condition. I don't have those facts in this case, but if those were the facts and if Blue Cross independently said they would pay it, yes, I could pursue them. And those were the facts in the Meadows case decided. That's something different than suing. No. Let's say my condition that's not covered is, oh, I don't know, pregnancy. It's very unlikely I'll get pregnant. But hypothetically. Hypothetically, yeah. Because a lot of plans don't cover pregnancy, or at least they didn't used to. You've got to pay yourself. So I have a plan that doesn't cover pregnancy, but you can make my insurance company pay for pregnancy anyway. There's a distinction. Because your preferred provider plan basically says you get the preferred provider rate for obstetrical care. There's a distinction that I'm not getting across, and I apologize for that. But the distinction is clear in all of the cases that are cited to you by both parties. The issue you're addressing, and I tried to respond to Judge Talman's point on this, what if there's no coverage? Or what if the person isn't eligible? What if they're not an employee? Or what if it's pregnancy and it's under your hypothetical? That's one circumstance. And if that's in dispute, then that's in dispute. What's in dispute? If coverage or eligibility is in dispute, that may or may not involve. There's no dispute here. Pregnancy is clearly not covered by my Blue Cross group plan, and it clearly is covered by your preferred provider plan. So you're saying we won't sue as your assignee on your group plan. We'll just sue under our preferred provider plan and get paid for your pregnancy treatment. Well, pregnancy treatment. Intellectually, it's hard for me to figure out how you're going to incur that expense. Me too. It's hypothetical. But if you incurred a medical expense, let's say plastic cosmetic elective surgery. I mean, that's a little easier for me to get my hands around. I could use it. Don't respond to that. That goes to coverage and eligibility, and that's a whole different argument. It's a whole different issue. Why is it different? Because it's in dispute. It's not in dispute in my case. All of my rights are guaranteed to me on the preferred provider agreement that the hospital has with Maplehurst, and it is that that I am suing on. We're arguing about a level of reimbursement here, and that is all. That is all. In that sense, it's the same case as Blue Cross versus Anesthesia Associates. We're just arguing about level of reimbursement. Nothing else is contested. So you're saying that in Blue Cross, because the anesthesiologists weren't happy with the amount of the reimbursement rates, independent of any individual claim that might have been made at the time, that's irrelevant to our case here. Yes. In the context of the hypothetical that Judge Kleinfeld presented, in that context, Blue Cross and Anesthesia Associates is on point with the case you've got here. Granted, there are distinctions in that, and that's an easier case, frankly. It doesn't go as far as I need it to go. But in the context of this question, it's the same. What are we arguing about? We're arguing about the same thing the anesthesiologists were arguing about in that case. How much do they owe us under the contract we have with them? And that is what we're arguing. Now I think I'm starting to understand your argument. So you're saying they agree their plan covers the little girls' head injuries. Yes. No problem there. The only problem is how much do they have to pay per day at the hospital? How much do they have to pay for the aspirin and the walker and whatever else the hospital provides them? And there we should get the preferred provider rates, and they're paying us the non-preferred provider rates. Exactly. I hadn't understood the dispute before just now to be about that. I thought they had paid you preferred provider rates. You just disagreed on how much was due under the preferred provider rates. Your Honor, you could read the Maplehurst employee benefit plan from start to finish, and it is not going to tell you what level of payment my client is entitled to for trauma care. Not in there. They didn't breach anything in there. We're not suing on any provision in there. So what's the purpose of the two-year statute of limitation then under the employer group health care plan? That is the other channel of payment. That applies to a, quote, claim for benefits, close quote, by a, quote, covered person, close quote. Those are the terms used in that two-year suit limitation. And if you look at the definitions. In a practical matter, it would only apply if the underlying claim was a dispute with a non-preferred provider that didn't have any contractual relationship. In practical effect, that is true. What are you providing the patient? Anything? What are we providing? What are you doing for the patient? Anything that you're getting paid for? What are we providing the patient? Yeah. We treated the patient for traumatic injuries. And she incurred expense of $272,000. Now we're seeking payment of that. I'm not understanding your question. Okay. And then the patient hired somebody else to pay that? Well, the patient was entitled to that by virtue of her parents' employment. Right. Okay. Her parents' employer elected to enter into an agreement directly with my hospital and said, we will pay you 100% for trauma care. But they never did. They never paid 100%. You skipped a step there. When I was following Judge Beeser's line of questions, he was saying you treated the little girl. The little girl's mother had paid an insurance company to pay medical expenses that her little girl incurred. No. There's no insurance company involved here. This is a self-insured plan. It is made by us. But there's free insurance, right? Or we don't want to get into that. That's not an issue in this application. There's no difference. They paid a plan. You know, the closest case to this, the one that I think is most instructive. Can I give you another? You had said that the only thing that that two-year statute would apply to is non-preferred providers. In response to Judge Talman's questions, I said that. It doesn't say that in the two-year statute. No. But what it does say is that it says this applies to a claim for benefits, which this court has held my claim is not. It is not a claim for benefits. And it says this applies to a claim by a, quote, covered person, close quote. My client is not a covered person. I have to seek payment from another avenue, and that avenue is the preferred provider agreement. I'm not even titled. Well, if the little girl wasn't a covered person, I mean, if the insurance company had said, she's not actually your daughter, she's your stepdaughter, you've never adopted her, and we don't cover non-adopted stepchildren, then I don't see where you'd be entitled to get paid. I wouldn't. There's no question. I have a preferred provider. My client has a preferred provider agreement that entitles them to 100 percent for trauma care and lesser percentages for other types of care. A condition to the obligation of the employer is that there is coverage and eligibility. Once that condition is satisfied, which is the case you have before you now, then the dispute centers on the preferred provider agreement. Well, the only wrinkle in this case is that there is, and which, of course, triggers the statute of limitation issue, is the timing of when the claim is submitted for payment. Had everything gone right and there not been what I'll call an accounting problem at your client's billing department, this $272,000 claim should have been billed within the two-year period, and then the hospital would have fought with the Benecor or the insurance companies or whoever is actually cutting the check over how big the check was going to be, right? Well, it was billed within 90 days at the correct amount. No, no, no, no, no. Let's not play games. The trauma occurs. There's an initial billing that goes out. They get paid on the initial billing, but that's not what this dispute is about. This dispute is about the fact that they brought in a third-party reviewer years down the road to look at your client's billing, and they said, oh, my God, poor little Michelle, we didn't ask for enough. And now more than two years later, I guess it was four years later, you come back and say we need more money. That's why we're here, right? I was responding to a point included in your recitation that is incorrect, and I don't know that it's really important, but I don't want it to go by me, and that is that an incorrect bill was not sent for more than two years. That is not correct. This trauma occurred in December of 1999, and by April of 2000, three, four months later, a correct bill of $272,000-and-some-odd dollars was sent. Thereafter, for no apparent reason, they sent a check for $45,000, asserting a discount under a contract that nobody is a party to. But you didn't challenge it. You passed the check. Granted. So you accept. I mean, I don't know whatever happened to accord and satisfaction, but there used to be this funny doctrine in law school that said if you took the money, you waived the claim. Your Honor, I'll tell you that doesn't work under health care. I'll tell you that if this court is going to hold that cashing a check for partial payments somehow constitutes an accord and satisfaction, it's going to be a tidal wave in the health care delivery system. I don't agree. Sometimes it depends on what the papers say. But isn't the fundamental question, yeah, ideally the bill would have gone out, it would have gotten paid, and none of us would be here. That didn't happen. I think most of us in our practices have sent out checks where they came with papers saying, if you accept this check, it's full satisfaction. There's nothing like that in this case. There's no accord and satisfaction. There's nothing like that. And I didn't mean to inject that into the case, but where I was really going was my concern that the statute of limitation is at issue here because had the billing arrangement been different, had the hospital billed Michelle's mother directly, and it was incumbent upon her to then present the bill to Benacor or whoever was administering the plan, then there might be an issue here as to whether Michelle's mother could come back more than two years later and say the hospital says I owe them more money, and the employer might be able to say, I'm sorry, but this claim is too late. That is all correct, and with all due respect, it entirely misses the point. Number one, incidentally, my client can't go that direction. Under the plan at page 161, we are a preferred provider, and we have to submit our claims directly. We cannot bill the patient. We are precluded. We can't balance bill. We cannot do that, period. Which is why I asked earlier about the non-preferred provider, because usually in that case, because they are non-preferred, they have to bill the patient directly. Yes, they do, which we didn't do. Right. Okay. And I guess your answer is, for all practical purposes, the two-year statute really is intended to cover those situations where, for whatever reason, the employee who's covered gets a bill and then wants to have the bill paid under the plan. And if the employee waits more than two years, they might be out a lot. No doubt about it. If you look at the defined terms in the two-year suit limitation clause, quote, benefit, close quote, quote, covered person, close quote, it doesn't apply to my client's claim. My client's not a covered person, and we're not seeking benefits. And that last point is big. We've gone way over time here because the case is of sufficient complexity so that it really should have been calendared for 20 minutes per side instead of 10. But I think we probably ought to put it to rest now. I'm not coming back up after a counsel. Doesn't sound like it. Thank you, Your Honor. You know, for an appellant, I kind of like to give them one minute anyway, just as a check and a restraint. So plan on having one minute. Thank you. Thank you, Mr. Parker. Thank you, Your Honors. Good morning. I'm Michelle Radosevich representing Maplehurst Bakeries. Any analysis of this case has to begin, as this Court did, with the plan. Because without the plan, Maplehurst Bakeries would have no obligation to pay the hospital or anybody else for the health care services that were rendered here. No other document creates an obligation to pay for services rendered to a particular individual, and no other document can modify the plan's conditions on payment. The hospital clearly admits that it loses under the plan, even though it originally brought it summary judgment as an assignee. It's now backed away and said that's irrelevant because they have a separate contract that creates an obligation independent of the plan. There are two problems with this. First, the contract in question does not create a separate payment obligation, and second, Maplehurst is not even a party to the contract to which they're pointing. Looking at the first problem, the contract that the hospital relies on is still a contract to pay for health care services under the plan. Both the language of the contract and an examination of the context lead to this conclusion. The contract explicitly incorporates the plan provisions. At paragraph 1.04, which you'll find at ER 116, that paragraph defines health care services or benefits as services that are provided pursuant to a beneficiary agreement, which in paragraph 1.02 on the same page is defined to mean plan. Read together with the promise to pay in paragraph 2.08, this contract promises to pay for services rendered to a plan beneficiary. Say that last thing again. What section did you refer to? Paragraph 2.08. Got it. Which is two pages later at ER 118. So if you read all these together, there is a promise to pay for services rendered to a plan beneficiary under the terms of the plan, and one of those terms is the statute of limitations. Common sense requires that the promise to pay is limited by the terms of the plan, and these are kind of the hypotheticals that you were getting at, Judge Kleinfeld. The terms of the plan dictate who's eligible. The hospital admits it can't bill Maplehurst for care rendered to individuals not covered by a plan. The terms of the plan dictate what services are covered. The hospital admits it can't bill Maplehurst for cosmetic surgery if cosmetic surgery isn't covered by the plan. The terms of the plan therefore also dictate when and for how long services are covered. The hospital cannot sue Maplehurst for payment more than two years after the services were rendered. And the hospital acknowledges all but the last of that chain of logic. The hospital says, well, of course we can't expect payment for services that aren't covered by the plan or that were rendered to people that were not covered by the plan, but we don't have to abide by the plan's statute of limitations. Their effort to distinguish the statute of limitations from other plan terms has no rational basis that I can see. You can't simply announce, as they do in their brief, that some provisions of the plan are procedural and therefore do not condition the payment for services. And it's also inconsistent for the hospital to cite in its brief and in the handout that was presented to you earlier and references this morning to the preferred provider provisions of the plan. They're trying to rely on the preferred provider provisions of the plan, which also, I might add, are procedural, and yet ignore the statute of limitations. Mr. Gosevich, what would your response be to what I assume Mr. Parker might say, that theoretically we could end up with 100 different statutes of limitation because there are lots of different employer plans out there, but only presumably one preferred provider agreement between the hospital and, in this case, Benicor. So would your position be that we're still going to have to look at what the statute is under each of the employer plans to determine whether the hospital gets paid in an identical plan? A two-part answer. Number one, the preferred provider agreements generally have prompt payment provisions in them, including this one. And I forget if it's 60 days or 90 days. But, I mean, at that point, you're certainly avoiding any statute of limitations problems. Because you're never going to get anywhere close to two years, let alone three. That's correct, that's correct. And that's probably the primary answer to the question. Is the hospital made aware of the exact contract that the preferred provider is claiming under at the time the services are rendered to the patient? Is the hospital made... It's not actually clear that it is, in a way. There are multiple chains of these preferred provider organizations out there, and it's actually possible for, mine is not an insurance company, but an employer who employed a TPA for a self-insured plan. It's possible to use different paths to get to the hospital eventually. Is there an agency relationship between the preferred provider and the hospital? Between the... Well, the hospital is claiming that it is the preferred provider. I think there may be an agency relationship between, but this isn't brief, between the preferred provider organization. In other words, the one that actually did the billing in this case and made the mistake. Logically could be seen as an agent at the hospital, but I don't know that actually to be the case, and that certainly isn't briefed. The agency claim... So that would only matter if the hospital was suing whoever did its billing for messing up when they took the $45,000 and closed the file. Right. In fact, it's really strange in some respects that the hospital relies on this contract between the third-party administrator and the PPO, because the contract... Every time you use an abbreviation, I stop listening to you while I try to remember the definition. I was trying to avoid the multitude of names, because Maplehurst and MultiCare sound somewhat alike, and I've been known to confuse them. I can't use names either. It's functions that really make it easy for me to understand. It is. So the third-party administrator... Which is Benacorp. Which is Benacorp. And the PPO network, which is... And then there's these national outfits networks that string these together, so that an employer in Indiana, in this case, in the sense of where the home office was, has access... But employees in Puget Sound... Those are the deals where they knock less off your bill if you're a preferred provider. That's exactly right. What these contracts basically do is they trade off access to discounted rates for expedited processing procedures. And that's the purpose behind them. Well, they did get a discounted bill, and my client paid the discounted bill after... Actually, the administrator paid the discounted bill after checking about it. But I agree that we're talking not about what the rate should be here. That's a different lawsuit. We're talking about the statute of limitations here, quite clearly, the right to payment. Let me move on to the contract itself and the fact that Maplehurst isn't a party to the contract, because I think that's the problem that you were getting at, Judge Beeser. The contract that the hospital relies on was made between the third-party administrator and the PPO network. So unless there's agency here between the third-party administrator and my client, the employer, and some kind of general agency, there is no contract. Maplehurst's contract with the TPA states that neither is acting as an agent for the other. That's at ER 236. And neither has the authority to bind the other to any third-party. These are pretty clear statements. They're both in the same paragraph at ER 236. But I thought the provision that Mr. Parker referred us to between Maplehurst as the employer and Benacor as the administrator authorized the administrator to enter into agreements with preferred providers in order to so that the Maplehurst employees would have doctors and hospitals that they could go to under the plan. It doesn't actually say that. What it actually says, and I don't have the language in front of me, but it says something about, you know, the TPA to make Maplehurst aware of preferred provider opportunities, I think. Some language to that effect. Oh, it says 3.17 at page ER 241 says if the plan utilizes a preferred provider organization, propose PPOs with which the claims processor has relationships for use by the plan. Is that the language you're referring to? That falls far short of an authorization to enter into contracts that would bind Maplehurst. This may not be in the record, but at some point Benacor must have come to the employer and said, you know, we recommend this particular organization that the hospital was a member of as being a preferred provider. But we don't know. That's not in the record, and because Benacorp had gone through successive reorganizations, a real effort was made to search for documents that might shed light on that chain of events, but there were no documents found. Does that create a contested issue of material fact on which we need to remand for a trial? I don't think so. I think that once Maplehurst put the contract into evidence that says neither the TPA nor Maplehurst can act as agent is acting as agent for the other, and that neither has authority to bind the other, those are pretty clear statements. And while it's true that people sometimes do What's TPA again? It's third-party administrator. I'm sorry, Your Honor. Those are pretty clear statements, and it was incumbent upon the hospital at that point to refute those statements with evidence that would, you know, place this into play for summary judgment purposes. Clearly under Celotax, they have the burden at trial on the question of agency, so they had a burden to come up with and come forward and refute this evidence, and the paragraphs that they point to don't do the trick. So if Mr. Parker is correct that first we have to determine eligibility and coverage, and there's no dispute about that, and the hospital is suing under the terms of the payor plan, then at best the hospital can look to Benecor or somebody, not the employer, for this amount, but it can't come back on the employer at this point. That's correct. And the problem with Benecor is it's, I guess, insolvent or gone or has no assets. In some kind of a government receivership proceeding in the state of Indiana. Okay. Putting aside the receiverships, tell me if I understand this right. Hospital treats a little girl, little girl's entitled to insurance coverage under a mother's employer's plan. Suppose the only dispute was about whether the hospital had been paid under the preferred provider rate, the preferred, except I guess this wouldn't happen, the preferred provider rate is lower, right? Right. Than a non-preferred provider. Correct. It's not that preferred providers get more money because you think they're really good doctors or hospitals, it's that they get less money because they've made a deal to take less money in exchange for expedited payment. Expedited payment and probably access to more markets, which can be kind of inferred from the agreements. I guess the only claim would be you didn't expedite the payment, so we should get interest because you delayed for a long time. I think that this kind of brings me to the last point I was going to make. Let me ask you about this. Let's say that the deal is preferred provider, expedited payment in exchange for a discounted rate. You didn't give us the expedited payment, you gave us the same slow pay that a non-preferred provider would get. And it adds up to hundreds of thousands of dollars of interest because of the vast amounts of money that go through hospitals. So we're suing you for that. It seems like for that, there would be a six-year statute of limitations. Yeah, I think that it is possible to state a claim that is separate and apart from the plan. And I think that the case the hypothetical that I've come up with, that would be a six-year statute? It seems like that there's a reasonable argument that there's a six-year statute of limitations there. I understand you're not conceding it because the case may happen, but right now that looks like it? I think that it is theoretically possible to state causes of action that stem from the preferred provider contract. I think that the Blue Cross case is actually a prime example of that. If you're fighting about what the rate schedule is in a disembodied way without having a particular patient at issue, you couldn't look to a plan. You could not look to a plan, and therefore it's just a plain old state law contract plan. If there's a distinction here, I guess it would be it's true that there wasn't a dispute over the amount of the reimbursement. It was how the amount of the reimbursement was discounted that caused the hospital to be paid less than what they think they should have been paid because it was a trauma case and not a non-trauma case. They're not really saying, as in Blue Cross where the anesthesiologist said, we don't like how much you're paying us for our services. We want more. If we were suing them or making a counterclaim saying that there should have been some kind of trauma care, that somehow they had maneuvered or breached the contract in not providing coverage for trauma care, that might be true. That might be an action that stood on the basis of the agreement. But, you know, in... Are they doing that here? I mean, are they saying this was coded as non-trauma care, but really it was trauma care and the rate of reimbursement for trauma care is higher? No, I don't think so. I think that, I mean, they are their suit. Their suit asks for payment for a particular individual. And no matter what, the terms of the plan are then imported into the suit and have to be read with. When you get medical care, there's always this form with a whole bunch of little boxes. And they check boxes and they have numerical codes, 236, 237, whatever. And as I understand it, the doctors in the hospitals get paid by the insurance company according to those codes. That's my understanding as well. Let's say they coded it as a 236 and the insurance company paid as though it were a 237, just because of a key punch error. Then I think the six-year statute would apply, wouldn't it? Well, it's hard for me to say. I mean, if you're not, if you don't have, one of the cases that they cite, and I don't remember which one. You understand what I'm getting at here is I think they may be trying to cast their claim that way. They may be trying to cast their claim as this was coding error. You paid us as though it was a 236 and actually it was a 237. So we're just disputing the rate of reimbursement under the preferred provider plan for the correct code. Yeah, they can try to cast it that way, but it seems to me... Why isn't it? Because you still have to look at the plan. Because the contract that's in question, that preferred provider contract between the third-party administrator and the preferred provider network, is 1.04, 1.02, and 2.08 to import the terms of the plan. Then in my hypo, the two-year statute under the plan would apply to the coding dispute. Yeah, it would apply to the coding dispute, because you're talking about a particular individual and their rights to payment. And you've got to come back within a certain amount of time in order to do that. I mean, the underlying problem here is on the reimbursement form, the claim form, the UB-92, right, that is standard in the industry. There was a box that should have been coded so that the payor knew that this was trauma-related care. And you get more money for trauma-related care than for general hospitalization. So why is that not different from Judge Kleinfeld's 236, 237 example? And my answer to Judge Kleinfeld is it still governed the statute of limitations in the plan still can be asserted as a defense in that situation. Because it's specific to this employee. Because you're really talking about payment for a particular individual. And the under that contract itself, it requires you to look at the plan terms to determine whether that individual would be eligible to get money under the plan for the things that you're billing for. And unless that individual is eligible to get money. But there's no dispute that the patient was covered and the service was covered. The only problem is that it should have been coded as trauma care rather than general hospital care. At the time. But if, I mean, the reason for the statute of limitations, if you will, seems to come in here. If that had happened, and it had been caught initially, or the mistake had never occurred in the first place, presumably what would have happened is the bill would have come in and it would have been presented to a VEMCO. Yet another funny name. The stop loss insurer who covers items above a certain level. And it would have been presented to them and they would have paid it. And they had actually been involved early on. Because they were notified that there was a potentially large claim there. But they have in their insurance policy a statute of limitations, which they have asserted in this case. But they're not before us today, that's correct. But, I mean, you see the position that the employer is in. You make business arrangements based upon these statute of limitations. You enter into contracts. You look at the business risks. And you have to give effect to those, or else the system kind of breaks down. We are about, over time, about, basically we made it a 20-minute per side argument. Because we needed that to understand it, or at least I did. Well, I would thank you and urge you to affirm the trial court. Thank you, counsel. We can't concentrate for much more than the minute I gave you. Thank you, Your Honor, I'm going to use my minute to draw your attention to four cases that are spot on on the issue that's been discussed for the last hour, which is this dual approach. PASCAC, cited in the briefs. Coverage and eligibility in this case are not in dispute. Instead, the resolution of this lawsuit requires interpretation of the provider agreement. The hospital's right to recovery, if it exists, depends on the operation of its provider agreement. Precisely the situation we have in this case. In PASCAC, the court allowed the hospital to go forward. That's out of circuit. Blue Cross versus Anesthesia Associates. The precise argument that Maplehurst is making here today was made in that case. I'm paraphrasing. The payer's overriding contention is that the provider's right to receive reimbursement from the payer depends upon the plan. We hold that the provider's claims, which arise from the terms of their provider agreements and could not be asserted by patient assigners, are not claims for benefits under the terms of the ERISA plan. Ergo, they are not subject to procedural limitations in the ERISA plan. The next case, Cedars-Sinai, your recent decision. A provider's contractual claim against a carrier does not constitute a request for payment of a health-related bill under the plan. Again, I'm paraphrasing. And even if it did, it would not be a claim, quote, under the plan because it is predicated on the preferred provider agreement. The final case, orthopedic surgery. To the extent providers are not being paid the amount to which they are entitled under their provider agreements, they are suing as creditors, and they are entitled to do so. What do we do with the excess insurance contract? They're not even a party here. Do they commit to apply too? We just heard about it. They're not here. No claims are being made against them. That's not an issue on this appeal, Your Honor. That was not addressed at the district court level. Do we have all the necessary parties to resolve this? Oh, certainly. The obligation is between the hospital and the payer. If the payer has some other tertiary relationship where they can go and try to recover from somebody else, which they have asserted in this case. But the employer gets stuck on something that, under their promise, ended four years ago. Maybe. They don't have to buy insurance. Let's say they're totally self-insured, no insurance at all. They say, we'll pay medical claims that are presented to us, and you can sue us for two years if we have a dispute, and then it's over. We destroy our records, everything's gone. And then a claim comes in several years after that. That isn't what they did. They entered into an agreement with my client and elected not to put any suit limitation clause in there. They could have done so, and it is commonly done. They didn't, so it defaults to the statute of limitations under state law. Well, thank you, counsel. This has been very helpful.
judges: Beezer, Kleinfeld, Tallman